*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN ORVIN BROWN,

Defendant-Appellant.

UNPUBLISHED
June 9, 2022

No. 357605
Wayne Circuit Court
LC No. 2018-007295-01-FH

Before: BOONSTRA, P.J., and GADOLA and HOOD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the out-of-guidelines sentence imposed by the trial court after defendant violated his probation. The trial court sentenced defendant to a prison term of two to five years for his conviction of aggravated stalking, MCL 750.411i. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2018, defendant was convicted of the aggravated stalking of his ex-girlfriend, JC. The conviction arose out of multiple attempts by defendant, on the same day, to break into JC's home, and defendant's conduct in damaging JC's rental car. Defendant's presentence investigation report (PSIR), prepared after his initial conviction, calculated his recommended minimum sentence guidelines range at zero to nine months' incarceration. The trial court sentenced defendant to five years' probation and ordered him to undergo a psychological evaluation and a domestic violence course and to have no contact with JC.

While on probation, defendant continued to stalk JC. JC reported to the police that defendant was contacting her despite having been ordered not to do so. Defendant used a text messaging application and Facebook Messenger to send JC pictures of her home, as well as pictures of a gun; he also threatened to harm anyone he saw on her level of her apartment complex.

---

[1] *People v John Orvin Brown*, unpublished order of the Court of Appeals, entered August 17, 2021 (Docket No. 357605).

Defendant also drove to the workplace of JC's new boyfriend and threatened him with a gun. JC contacted the police and informed them that defendant had threatened her boyfriend, and that he had begun threatening her own life once she became involved with her new boyfriend.

In 2019, defendant was arrested in Washtenaw County and again charged with aggravated stalking, MCL 750.411i, as well as with the violation of a personal protection order (PPO), MCL 764.15b. In 2020, defendant was arraigned in Wayne County for violating his probation in this matter. Before the probation violation sentencing, defendant was convicted of multiple offenses in Washtenaw County, including aggravated stalking (of JC), MCL 750.411i; possession of less than 25 grams of a controlled substance, MCL 333.7403; and felon in possession of a firearm (felon-in-possession), MCL 750.244f. Defendant was sentenced to probation regarding these charges in Washtenaw County, and was to serve the first four months in the Washtenaw County jail.

Defendant pleaded guilty to violating his probation (in this matter) in Wayne County. At the sentencing hearing, defendant acknowledged that he had violated his probation, but argued that he had changed, as was evidenced by letters from defendant and his fiancée, and by JC's stated desire that defendant avoid jail time in order to be able co-parent their children. The trial court and the parties agreed that defendant's recommended minimum sentence guidelines range was zero to nine months. The trial court sentenced defendant as described, stating in relevant part:

> For the charge of aggravated stalking, you are resentenced to serve a minimum of two years maximum of five years in the Michigan Department of Corrections. This sentence will run concurrent to the sentence you are serving in Washtenaw County.

> So let me say this, I want to make an extensive record . . . . I know, Mr. Brown, you've requested . . . just a four-month sentence. And also just for the record, I have received correspondence from your fiancée . . . .

> But let me just say for the record the Court does note that this sentence imposed today is a departure from the guidelines of zero to nine months. For the record, that was the original score of the guidelines and the zero to nine did not take into account Mr. Brown's actions since being placed on probation for aggravated stalking by this Court . . . .

> In imposing this sentence this Court notes that [sic] the following actions on behalf of Defendant since being placed on probation. Defendant was convicted of the new aggravated stalking case, weapons firearms possession by a felon and controlled substance less than 25 gram[s]. All arising out of cases in Washtenaw County. . . . Additionally, as it pertains to this Court's case where he was on probation for aggravated stalking Mr. Brown did not complete his psychological exam and failed to complete the domestic violence training as ordered. Therefore, the Court finds that this departure is reasonable and proportionate.

The trial court also addressed defendant's impending marriage and expected child, but found that these circumstances did not excuse defendant's behavior. The trial court also stated

that it was imposing a slightly lesser sentence (than it otherwise would) because of defendant's good behavior during the probation violation proceedings, but concluded, despite defendant's circumstances and good behavior, that defendant's actions required consequences.

Defendant moved for bond pending appeal, which the trial court denied. Included in defendant's application for bond was an e-mail from JC, in which JC stated that she "did not intend for [defendant] to be sent to prison or be away from [their] children[.]" JC asserted that she and defendant were able to successfully co-parent during the year 2020, and requested that defendant be granted bond pending appeal to avoid further trauma to their children.

This appeal followed.

## II. STANDARD OF REVIEW

We review an out-of-guidelines sentence for reasonableness. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citations omitted). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *Id*. (quotation marks and citation omitted, alteration in original). "[T]he relevant question for appellate courts reviewing for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *Id*. (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted).

## III. ANALYSIS

Defendant argues that the trial court erred by imposing an unreasonable and disproportionate sentence. We disagree.

Michigan's sentencing guidelines are advisory. *People v Lockridge*, 498 Mich 358, 399; 870 NW2d 502 (2015). "The legislative sentencing guidelines apply to sentences imposed after probation revocation." *People v Hendrick*, 472 Mich 555, 565; 697 NW2d 511 (2005). "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the departure is reasonable and the court states on the record the reasons for departure." MCL 769.34(3) (footnote and citation omitted). An out-of-guidelines sentence must conform with the principle of proportionality. *Dixon-Bey*, 321 Mich App at 520.

The principle of proportionality is one in which[:]

> [A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender. [*Id*. at 520-521 (quotation marks and citations omitted).]

"Under this principle, the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Id*. at 521 (quotation marks and citations omitted). Factors for a trial court to consider in making its proportionality determination include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (quotation marks and citation omitted).]

Defendant argues that the trial court failed to recognize that the sentencing guidelines applied to his post-probation-violation sentencing. This argument is contradicted by the record. The trial court stated that it had read the PSIR, acknowledged the guidelines sentencing range, and recognized that its sentence was outside the guidelines. The trial court also recognized that the sentencing guidelines are advisory. *Lockridge*, 498 Mich at 399. There is no merit to defendant's contention the trial court ignored the sentencing guidelines or defendant's calculated guidelines range.

Defendant also argues that the trial court failed to articulate on the record the reasoning for its sentence. This, too, is contradicted by the record. After acknowledging that its sentence was outside the guidelines, the trial court stated that the sentence was appropriate because the guidelines did not account for defendant's actions while on probation, which included the continued stalking of JC as well as new charges involving threats to JC's current boyfriend and other felonies, all of which justified a sentence above the guidelines. The trial court further noted that defendant had failed to complete the condition of his probation that he undergo a psychological examination and take a domestic violence course. The trial court made ample findings on the record supporting its reasoning for imposing defendant's sentence.

Defendant also argues that trial court's sentence was unreasonable and disproportionate. We disagree. The factors underlying the principle of proportionality support the trial court's decision. Defendant's initial conviction of aggravated stalking involved his repeated attempts to invade JC's home while she was present. While on probation for this conviction, defendant not only continued to contact JC despite a no contact order and a PPO, but also sent her threatening messages including pictures of her home and a gun. Defendant also threatened JC's boyfriend, going so far as to appear at his workplace with a gun. As the trial court noted, the guidelines did not adequately take into account defendant's actions while on probation. Not only did defendant continue to stalk and threaten JC, but he accumulated additional felony charges including an additional charge of aggravated stalking. The sentencing guidelines of zero to nine months, having been calculated after his initial conviction, did not account for defendant's subsequent stalking and other criminal behavior while on probation. Defendant also failed to take a psychological examination or attend domestic violence classes—in other words, defendant not only failed to

complete a requirement of his probation, but refused to take action to address the issues underlying his continued stalking and terrorizing of JC and others.[2]

Additionally, the trial court considered other factors that the sentencing guidelines did not take into account, "such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Lawhorn*, 320 Mich App at 207 (quotation marks and citation omitted). The trial court considered that JC wished for defendant to avoid imprisonment, as well as defendant's good behavior while in custody, noting that defendant's circumstances and good behavior resulted in a sentence lower than it otherwise would have been. Defendant argues the PSIR did not accurately reflect his remorse. However, at sentencing, when given the chance to speak, defendant stated only: "I'm at the mercy of the Court, your Honor. That's—that's about all I can say. My lawyer said everything for me for the most part, everything he said was correct." In sum, the trial court was not required to consider mitigating factors, see *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011) (explaining that a trial court in Michigan is not required to consider mitigating factors during sentencing), but it is clear that the trial court did consider mitigating factors in this case, yet nonetheless concluded that an out-of-guidelines sentence was warranted. Based on defendant's conduct while on probation, none of which was reflected in his guidelines range, the trial court's sentence was within the range of principled outcomes. *March*, 499 Mich at 397.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Noah P. Hood

---

[2] Defendant's argument that his failure to submit to a psychological examination and a domestic violence course should not be held against him because it was the fault of his field agent is unpersuasive. While defendant asserts that his field agent bore the burden of requesting these services, he provides no legal or factual support for this assertion. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Kevorkian*, 248 Mich App at 389 (quotation marks, footnote, and citation omitted).