# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEMARIOL DONTAYE BOYKIN,

Defendant-Appellant.

UNPUBLISHED
March 20, 2018

No. 335862
Kent Circuit Court
LC No. 03-004460-FC

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his sentence of 40 to 60 years' imprisonment imposed by the trial court upon resentencing for his conviction of first-degree murder, MCL 750.316(1). We affirm.

## I. FACTS

In 2003, when defendant was 17 years old, he shot and killed Shawn Broyles, who was 18 years old. This Court, previously reviewing this case, summarized the facts as follows:

> The victim, Shawn Broyles, and defendant's brother Marvin were engaged in a fist-fight. Broyles' two friends were present, but did not think the fight was serious enough to merit their involvement. Defendant, his father, and defendant's brother Charles were present. Neither defendant's father nor Charles thought the fight was serious enough to merit their intervention either. At no time did Broyles attack or threaten to attack defendant. In fact, Broyles had already begun running from the scene of the altercation when defendant started shooting at him.
>
> Second, defendant had time in which to consider his actions. Broyles pleaded with defendant to "Come on, stop," presumably after he saw the gun in defendant's hand. Defendant, however, did not stop. Broyles turned and ran from defendant. Defendant raised his gun and fired three to four shots at Broyles. Broyles fell after being shot twice. One witness testified that defendant lifted Broyles up by his jacket hood, put the gun to his cheek, and pulled the trigger, but the gun did not fire. The gun, found by Broyles' cousin, was determined to be jammed. After attempting to shoot Broyles again, defendant and his two brothers kicked Broyles as he lay dying on the sidewalk. Defendant's brother Marvin

-1-

testified that defendant said he shot Broyles because Broyles had jumped him a few years before. *[People v Boykin*, unpublished opinion per curiam of the Court of Appeals, issued July 14, 2005 (Docket No 253244).]

Defendant was convicted after a jury trial of first-degree murder, MCL 750.316(1), possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b, and as a fourth-offense habitual offender, MCL 769.12. Defendant was sentenced to life imprisonment without possibility of parole for the murder conviction, and to two years for the felony firearm conviction. This Court affirmed defendant's convictions.[1]

Thereafter, defendant pursued a number of post-conviction measures to overturn his conviction and sentence. In 2016, a writ of habeas corpus was issued for resentencing pursuant to the United States Supreme Court decisions in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), which held that mandatorily sentencing a juvenile to life without the possibility of parole was unconstitutional, and *Montgomery v Louisiana*, 577 US __; 136 S Ct 718; 193 L Ed 2d 599 (2016), which applied *Miller* retroactively. *People v Hyatt*, 316 Mich App 368, 383; 891 NW2d 549 (2016). Because defendant's conviction of first-degree murder received a mandatory life sentence without possibility of parole, defendant was entitled to resentencing under *Miller* and *Montgomery*, as well as Michigan's legislative response to *Miller*, MCL 769.25a.

At resentencing in this case, the prosecutor did not seek a life sentence for defendant, but instead suggested a sentence of 40 to 60 years for the first-degree murder conviction. Defense counsel asked the trial court to consider a sentence of 25 to 60 years. The trial court sentenced defendant to 40 to 60 years' imprisonment, stating at the resentencing hearing, in part:

Well, I sentenced as I have indicated, and one of the aspects of the requirement imposed on the Court is to determine a variety of factors articulated in this *Miller v Alabama* case. I'll not articulate all of them. They'll be incorporated by reference in the comments I'm making. Age and maturity, his impetuosity, his family history, home environment and the like, all of them, all of them have been considered by the Court.

## II. DISCUSSION

On appeal, defendant first contends that the trial court did not properly apply the factors discussed in *Miller* when resentencing defendant, and that defendant's new sentence therefore does not comply with the constitutional mandate that juveniles be treated differently than adults when sentenced. We disagree.

We review a sentence imposed by the trial court for an abuse of discretion. *Hyatt*, 316 Mich App at 423. "The limit on the judicial discretion to be exercised when imposing penalties

---

[1] *People v Boykin*, unpublished opinion per curiam of the Court of Appeals, issued July 14, 2005 (Docket No 253244).

-2-

is that the punishment should be proportionate to the offender and the offense. . . . Hence, appellate review of the sentence imposed is for abuse of discretion, to determine whether the sentence violates the principle of proportionality, 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id.*, citing *People v Milbourn*, 435 Mich 630, 636, 651-652; 461 NW2d 1 (1990).

In *Miller*, the United States Supreme Court held that mandatory, life-without-parole sentences for juvenile offenders were unconstitutional because the youthfulness of the offender was not considered, resulting in the risk of disproportionate punishment. *Miller*, 567 US at 465, 479. In *Miller*, "[t]he Court emphasized that the unique characteristics of youth warranted treating juveniles differently from adults for purposes of sentencing." *Hyatt*, 316 Mich App at 379. The *Miller* Court outlined three gaps that exist between juveniles and adults:

> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable . . . to negative influences and outside pressures, including from their family and peers; they have limited contro[l] over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievabl[e] deprav[ity]. [*Miller*, 567 US at 471 (quotation marks and citations omitted).]

In response to *Miller*, Michigan enacted 2014 PA 22, which, in relevant part, added MCL 769.25. *Hyatt*, 316 Mich App at 384. Under this statute, if upon resentencing the prosecutor declines to move for the reinstatement of a defendant's sentence of life without parole, and if the trial court decides not to sentence the defendant to life without parole, then the defendant must be sentenced to "a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall not be less than 25 years or more than 40 years." See MCL 769.25(4) and (9).

In this case, the prosecutor did not move for the reinstatement of defendant's prior life-without-parole sentence. At the resentencing hearing, the trial court stated that it was aware of *Miller* and that it was considering all of the *Miller* factors, including, but not limited to, age, maturity, impetuosity, family history, and home environment. The trial court thereafter sentenced defendant to a term of years, choosing not to impose a sentence of life without parole. See MCL 769.25(4) and (9).

Defendant argues that the trial court failed to properly consider the directive of *Miller* that juveniles should be considered differently during sentencing. The decision in *Miller*, however, applies only to juveniles sentenced to life without parole. *Miller*, 567 US at 465. Here, the trial court did not sentence defendant to life without parole, but instead sentenced defendant to a term

of years in compliance with MCL 769.25. The trial court, therefore, was not compelled to consider the *Miller* factors.[2]

Moreover, because defendant's sentence of 40 to 60 years' imprisonment was within the statutorily mandated range requiring 25 to 40 years for the minimum term and 60 years for the maximum term, the sentence is presumptively proportionate. See *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991) (holding that a legislatively mandated sentence is presumptively proportionate and valid). Considering the totality of the circumstances, defendant's sentence was proportionate to the seriousness of the offense—first-degree murder— and the offender, who was almost 18 years old at the time of the crime and who acted with extreme brutality by executing another teenager with virtually no provocation. We conclude that the trial court did not abuse its discretion in imposing a sentence of 40 to 60 years' imprisonment for defendant's conviction of first-degree murder.

Defendant next briefly contends that MCL 769.25(9) is unconstitutional because it imposes a mandatory minimum sentence upon a juvenile convicted of murder without requiring a trial court to consider the factors of *Miller*, which defendant argues therefore violates the Eighth Amendment. Again, we disagree.

The federal constitution prohibits "cruel and unusual" punishment, US Const, Am VIII, (while the Michigan constitution prohibits "cruel or unusual" punishment, Const 1963, art 1, § 16). See *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). In *Miller*, the United States Supreme Court considered an Eighth Amendment challenge to mandatory life-without-parole sentences for juvenile offenders in homicide cases, and concluded that "given all we have said in *Roper* [*v Simmons*, 543 US 551; 125 S Ct 1183; 161 L Ed 2d 1 (2005)], *Graham* [*v Florida*, 560 US 48; 130 S Ct 2011; 176 L Ed 2d 825 (2010)], and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Miller*, 567 US at 479. The *Miller* Court, focused upon this "harshest possible penalty," held that a sentencing scheme that mandates life-without-parole sentences for juvenile offenders violates the Eighth Amendment's prohibition against cruel and unusual punishment because it carries too great a risk of disproportionate sentencing. See *People v Garay*, 320 Mich App 29, 44; 903 NW2d 883 (2017).

---

[2] Though not mandated by *Miller*, the trial court actually did consider the *Miller* factors when resentencing defendant. The trial court stated that it was considering all the *Miller* factors and specifically mentioned its consideration of defendant's psychological evaluations, defendant's childhood, and his misconducts while in prison involving intoxicating substances and weapons. Evaluating these factors, the trial court determined that defendant's youth and immaturity were not an excuse for his conduct, and that "[t]here was nothing to suggest here anything other than this was a cold, calculated, premeditated killing of an innocent human being who represented no threat to [defendant]."

In response to *Miller*, our Legislature enacted MCL 769.25, pursuant to which defendant in this case was resentenced to a term of years, not to life without possibility of parole. Defendant points to no authority to support his contention that *Miller* requires consideration of its factors in cases where a juvenile is being sentenced to some term other than life without parole,[3] nor does defendant provide support for his theory that any statute that permits sentencing a juvenile without consideration of the *Miller* factors violates the Eighth Amendment. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015) (citation omitted).

Affirmed.

/s/ Jane E. Markey
/s/ Michael F. Gadola

---

[3] Moreover, we again note that the trial court in this case did, in fact, consider the *Miller* factors when sentencing defendant, apparently believing that it was obligated to do so.