*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee/Cross-Appellant,

v

DOMINICK DONOVAN WILLIAMS,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
August 3, 2023

No. 352302
Macomb Circuit Court
LC No. 2018-003529-FC

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

## ON REMAND

Defendant, who was 18 years old at the time of the offense, was convicted by jury trial of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13). Defendant was sentenced to 15 to 40 years' imprisonment. Defendant filed an appeal of right, arguing that his trial counsel was ineffective in multiple respects, and the prosecutor filed a cross-appeal, arguing that the trial court had erred by failing to sentence defendant to the statutorily mandated minimum term of 25 years. This Court rejected defendant's appellate arguments but agreed with the prosecutor's argument on cross-appeal, thus affirming defendant's conviction and remanding for resentencing. *People v Williams*, unpublished per curiam opinion of the Court of Appeals, issued July 29, 2021 (Docket No. 352302) (*Williams I*), vacated in part & remanded, lv den in part 510 Mich 1094 (2022). Defendant applied for leave to appeal in our Supreme Court. The Court vacated the part of our opinion that reversed defendant's sentence, and remanded the case to this Court for reconsideration of that issue in light of *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), and *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022). *People v Williams*, 510 Mich 1094 (2022) (*Williams II*). The Court denied leave to appeal in all other respects. *Id*. We again reverse defendant's sentence and remand for resentencing in conformity with MCL 750.520b(2)(b).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The underlying facts were provided in our previous opinion as follows:

Defendant, at age 18, was close friends for many years with complainant's older brothers, and had become close with the entire family. On an occasion when defendant spent the night at the family's home, complainant, age 12 at the time, found herself alone on the couch with defendant, watching a movie while everyone else had fallen asleep. Complainant testified that defendant held her hand under the blankets, and, less than 10 minutes later, defendant put his hand into her shirt and under her bra to feel her breast while she felt frozen in fear. Complainant reported that, five or 10 minutes later, defendant opened his pants, placed her hand on his penis, and moved it up and down. Defendant then put his hand into her underwear, and moved two fingers in and out of her vagina for about five to 10 minutes. According to complainant, defendant asked if he might insert his penis into her vagina, and she said "no" before leaving the couch. The following day, complainant disclosed the incident to her friends, who informed her family. Complainant's brothers separately confronted defendant, who confirmed that he had sexually assaulted complainant. Complainant's mother contacted the police. [*Williams I*, unpub op at 1.]

Defendant was convicted and sentenced as described, *id*., and on appeal, this Court rejected his arguments that his trial counsel was ineffective. *Id*. at 1-5.

On cross-appeal, the prosecutor argued that the trial court erred by failing to sentence defendant to the statutorily mandated minimum term of 25 years, and we agreed. *Id*. at 1. We noted that "[a] conviction of first-degree criminal sexual conduct is normally punishable by imprisonment for life or any term of years." *Id*. at 5, citing MCL 750.520b(2)(a). But when the defendant is 17 years of age or older "and the victim is under the age of 13, as in this case, the sentence is 'imprisonment for life or any term of years, but not less than 25 years.' " *Williams I*, unpub op at 5, quoting MCL 750.520b(2)(b). The prosecutor argued that the trial court erred by imposing a minimum sentence that fell below the statutory requirement. *Williams I*, unpub op at 5. Defendant asserted, both below and "on appeal, that application of the mandatory minimum in his case would be disproportionate, and in violation of the prohibition of 'cruel and unusual' punishment in the Eighth Amendment of the United States Constitution." *Id*. We noted that "[t]he Michigan Constitution similarly prohibits 'cruel or unusual' punishment." *Id*., citing Const 1963, art 1, § 16.

The trial court declined to impose the statutorily mandated minimum sentence

by noting how much longer that 25-year minimum was than the guidelines recommendation of 27 to 45 months, that defendant had just turned 18 years old at the time of the crime, had no history of sex crimes or other criminality, and that his crime did not involve a weapon or coercion. The trial court opined that the factors of youth described in *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012), "would necessarily apply to the defendant in this case," and stated that defendant had lived an unremarkable life, graduated high school, and had aspirations. [*Williams I*, unpub op at 5.]

The trial court concluded that

[n]one of . . . these circumstances are taken into account in the guidelines nor can they be with the statutorily required minimum sentence of 25 years. The court believes its mandatory sentence in this case unnecessarily limits judicial discretion, prohibits the court for [sic: from] fashioning a sentence to fit the offender and the circumstances of the case. For all these reasons, the court finds the 25-year mandatory sentence to be disproportionate.

While there is no precise mathematical calculation that can be utilized, the sentence to be imposed . . . this court believes . . . takes into account the age of the victim, the seriousness of the offense, and will assure protection of society and act as a deterrent to further behavior of this type by the defendant. [*Id*. at 5-6 (quotation marks omitted).]

We explained the flaws in the trial court's reasoning as follows:

However, proportionality in the context of a legislatively mandated sentence "concerns whether the punishment concededly chosen or authorized by the Legislature is so grossly disproportionate as to be unconstitutionally 'cruel or unusual,' " and the discussion of general principles of proportionality in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d (2011), adopted in *People v Steanhouse*, 500 Mich 453, 471-472; 902 NW2d 327 (2017), "has no applicability to a legislatively mandated sentence because the trial court, in that case, lacks any discretion to abuse." *People v Bullock*, 440 Mich 15, 34 n 17; 485 NW2d 866 (1992). "Because the Legislature subscribed to the principle of proportionality in developing the sentencing scheme," a legislatively mandated sentence is presumed to be proportionate and valid. *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991). Accordingly, the trial court erred to the extent that it based its sentence, and its rejection of the legislatively mandated 25-year minimum sentence, on general principles of proportionality. Additionally, the trial court erred to the extent that it believed that *Miller* applied to this case, because *Miller* concerned the sentencing of a juvenile, rather than an adult, as is the case here. See *Miller*, 567 US at 470-474. [*Id*. at 6 (footnote omitted).]

We took note of defendant's acknowledgment that "this Court has considered and rejected his constitutional argument relating to cruel and unusual punishment." *Id*., citing *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011). We explained:

The defendant in *Benton* emphasized that the offenses at issue "did not involve any force, violence, coercion, or trickery, and that the victim did not sustain physical or psychological injury," and that the defendant had "no prior criminal record of any kind . . . and she had otherwise led an exemplary life." *Benton*, 294 Mich App at 205 (quotation marks omitted). The defendant argued, therefore, that "her sentences are unduly harsh in view of the particular offense, which she characterizes as a comparatively benign type of child assault." *Id*. This Court evaluated the pertinent factors and stated, "we reject defendant's argument that her

-3-

mandatory 25-year minimum sentences are unconstitutionally cruel or unusual." *Id*. at 207. [*Williams I*, unpub op at 6.]

Moreover, " '[i]n deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states.' " *Id*., quoting *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). We continued:

> In *Benton*, 294 Mich App at 205-205 [sic], this Court determined that the severity of the 25-year mandatory minimum sentence imposed was not disproportionate to the gravity of an adult committing a sexual crime against a child less than 13 years old, even considering the defense argument that the behavior underlying the conviction was not particularly egregious in the context of sexual abuse. This Court reasoned that the Legislature was furthering Michigan's public policy of protecting children from sexual exploitation, and stated that "the Legislature did not intend to withdraw the law's protection of the victim in order to protect the offender." *Id*. at 205 (quotation marks and citation omitted). This Court also concluded that the mandatory sentence was not disproportionately harsh compared to sentences for other violent offenses in Michigan. *Id*. at 206. The Court reasoned that "sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation," and that "sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences." *Id*. This Court concluded that "[t]he unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum sentence is unduly harsh." *Id*. Also, this Court noted that at least 18 other states imposed the same sentence for the same crime. *Id*. at 206-207 & n 1. [*Williams I*, unpub op at 6-7.]

We rejected defendant's attempt to distinguish *Benton* from the present case:

> Defendant argues that *Benton* is distinguishable from the instant circumstances because *Benton* involved an older defendant who had a trusting relationship with the victim. However, defendant was in fact legally an adult at the relevant time, even if a young one, and he also had a trusting relationship with complainant as a close family friend. This Court has examined the constitutionality of the challenged mandatory minimum sentence in broad terms as discussed above, and determined that it is not unconstitutionally cruel and unusual punishment. This Court is bound to follow this Court's decision in *Benton*, as was the trial court. [*Id*. at 7.]

We thus affirmed defendant's conviction but remanded for resentencing. *Id*. at 7.

Defendant filed an application for leave to appeal in our Supreme Court. While defendant's application was pending, our Supreme Court issued its opinions in *Parks* and *Stovall*. In *Parks*, 510 Mich at 265-266, the Court held "that Michigan's sentencing scheme mandating that 18-year-old defendants convicted of first-degree murder receive a sentence of life imprisonment without

-4-

the possibility of parole is cruel or unusual punishment under Const 1963, art 1, § 16." In *Stovall*, 510 Mich at 307-308, the Court held that "the defendant's life sentence with the possibility of parole for second-degree murder, imposed for a crime committed when he was a juvenile,"[1] violated "the prohibition against cruel or unusual punishment in Const 1963, art 1, § 16 . . . ." Following the issuance of *Parks* and *Stovall*, our Supreme Court vacated the part of this Court's opinion that reversed defendant's sentence, and remanded the case to this Court for reconsideration of that issue in light of *Parks* and *Stovall*. *Williams II*, 510 Mich at 1094. The Court denied leave to appeal in all other respects, and did not retain jurisdiction. *Id*.

## II. ANALYSIS

The mandatory minimum sentence of 25 years for first-degree criminal sexual conduct prescribed by MCL 750.520b(2)(b) is not cruel or unusual punishment in violation of Const 1963, art 1, § 16. Our analysis in *Williams I* remains sound following the issuance of *Parks* and *Stovall*.

In *Williams I*, we recognized that this Court is bound by the opinion in *Benton*, 294 Mich App at 203-207, which rejected the same constitutional argument relating to cruel or unusual punishment. *Williams I*, unpub op at 6-7. Whereas *Benton* addressed the precise issue before this Court in this case, neither *Parks* nor *Stovall* addressed the constitutionality of the 25-year mandatory minimum sentence for first-degree criminal sexual conduct set forth in MCL 750.520b(2)(b). In *Parks*, 510 Mich at 265-266, our Supreme Court held "that Michigan's sentencing scheme mandating that 18-year-old defendants convicted of first-degree murder receive a sentence of life imprisonment without the possibility of parole is cruel or unusual punishment under Const 1963, art 1, § 16." The Court "conclude[d] that the Michigan Constitution requires that 18-year-olds convicted of first-degree murder receive the same individualized sentencing procedure under MCL 769.25 as juveniles who have committed first-degree murder" rather than receiving a mandatory life-without-parole sentence. *Id*. at 244. And in *Stovall*, 510 Mich at 307-308, our Supreme Court held that "the defendant's life sentence with the possibility of parole for second-degree murder, imposed for a crime committed when he was a juvenile," violated "the prohibition against cruel or unusual punishment in Const 1963, art 1, § 16 . . . ."

Because neither *Parks* nor *Stovall* addressed the precise issue that is before this Court, we remain bound by *Benton* to reject defendant's constitutional challenge. In addition to the fact that neither *Parks* nor *Stovall* addressed the constitutionality of the statutorily-required 25-year minimum sentence for first-degree criminal sexual conduct, it is notable that the holding in *Stovall* pertained to juveniles, whereas defendant was 18 years old when he committed the offense. And although the holding in *Parks* applied to 18-year-old offenders, that was in the specific context of a mandatory life-without-parole sentence, the most severe punishment available under Michigan law, whereas the present case concerns a mandatory minimum for a term-of-years sentence.

Our Supreme Court in *Parks* emphasized that the defendant's "current fate [was] to die in prison" and that life-without-parole sentences were similar to death sentences because "imprisonment without hope of release for the whole of a person's natural life is a forfeiture that

---

[1] The defendant in *Stovall* "murdered two people one month before he turned 18 years old." *Stovall*, 510 Mich at 332 (ZAHRA, J., dissenting).

is irrevocable." *Parks*, 510 Mich 256-257 (quotation marks and citation omitted). The Court noted that young offenders receiving a life-without-parole sentence "will inevitably serve more time and spend a greater percentage of their lives behind prison walls than similarly situated older adult offenders." *Id*. at 257. See also *id*. at 261 ("It is cruel that our current sentencing scheme requires 18-year-old defendants to, on average, serve far more severe penalties than equally or more culpable older adult defendants."). None of this is true for a term-of-years sentence with a mandatory minimum of 25 years. A defendant who begins serving his 25-year minimum sentence at the age of 18, for example, will potentially be eligible for parole at the age of 43. An older adult offender who begins serving his 25-year minimum sentence at the age of 30 will potentially be eligible for parole at the age of 55. The disparity discussed in *Parks* is not present here. Therefore, much of the analysis in *Parks* is inapt in the context of a 25-year mandatory minimum sentence.

Our Supreme Court in *Parks* further noted that it was "examin[ing] today an irrevocable sentence, offering no hope of release," and that "the goal of rehabilitation is not accomplished by mandatorily sentencing an individual to life behind prison walls without any hope of release." *Id*. at 264-265. The Court stated that, "[w]ithout hope of release, 18-year-old defendants, who are otherwise at a stage of their cognitive development where rehabilitative potential is quite probable, are denied the opportunity to reform while imprisoned." *Id*. at 265. Such a system "forswears altogether the rehabilitative ideal." *Id*. (quotation marks and citations omitted). Again, none of that is true here. A term-of-years sentence with a mandatory 25-year minimum leaves open the opportunity to reform and obtain release, and it does not forswear altogether the rehabilitative ideal. See generally, *Graham v Florida*, 560 US 48, 75; 130 S Ct 2011; 176 L Ed 2d 825 (2010) ("A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.").

The analysis in *Stovall* is likewise inapposite. Again, the holding in *Stovall* pertained to juveniles, whereas defendant was 18 years old when he committed the offense. Also, our Supreme Court in *Stovall* noted that "a parolable life sentence is the most severe penalty that can be imposed for second-degree murder." *Stovall*, 510 Mich at 314. By contrast, the mandatory minimum sentence of 25 years is not the most severe penalty that can be imposed for the offense of which defendant was convicted. First-degree criminal sexual conduct is punishable by imprisonment for life or any term of years, subject to the 25-year mandatory minimum when applicable. MCL 750.520b(2)(b). Therefore, imposition of the 25-year mandatory minimum sentence will not subject defendant to the most severe penalty available for the offense of which he was convicted.

The *Stovall* Court reasoned that sentencing a juvenile to life with parole for second-degree murder was disproportionate. *Stovall*, 510 Mich at 318. The Court explained that a juvenile convicted of first-degree murder who received a term-of-years sentence would receive a 60-year maximum and thus must be released upon serving the 60-year maximum, whereas a juvenile convicted of second-degree murder and sentenced to life imprisonment with the possibility of parole would not be guaranteed release upon serving 60 years. *Id*. at 317-318. This reasoning, which compared the statutory maximum for a term-of-years sentence for first-degree murder to a parolable life sentence for second-degree murder, is inapt in the context of the mandatory minimum sentence for first-degree criminal sexual conduct prescribed by MCL 750.520b(2)(b).

It is true that the mandatory minimum sentence of 25 years set by MCL 750.520b(2)(b) is the same length as a minimum sentence allowed for first-degree murder committed by a juvenile. See *Stovall*, 510 Mich at 316 (noting that "the minimum sentences now given to most juveniles who commit *first-degree* murder" is "25 to 40 years"). But this fact alone does not render the 25-year mandatory minimum sentence of MCL 750.520b(2)(b) so grossly disproportionate as to be unconstitutionally cruel or unusual. The following reasoning in *Benton* remains sound:

> Defendant also argues that the mandatory 25-year minimum sentence is unduly harsh compared to penalties for other offenses under Michigan law, including many violent offenses. We are not persuaded that these comparisons render the 25-year minimum sentence disproportionate to the offense. The perpetration of sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation. Even when there is no palpable physical injury or overtly coercive act, sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences. The unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum sentence is unduly harsh. [*Benton*, 294 Mich App at 206.]

This Court in *Benton* also concluded that "a comparison of Michigan's penalty and penalties imposed for the same offense in other states fails to support defendant's attack on the constitutionality of Michigan's sentencing statute." *Id*. at 206-207.

In the end, this Court remains bound by *Benton*, which was not overruled or modified by *Parks* or *Stovall*. See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."); MCR 7.215(J)(1) (this Court must follow its published decisions issued on or after November 1, 1990, except decisions that have been reversed or otherwise modified by the Supreme Court or a special panel of this Court)." Neither *Parks* nor *Stovall* addressed the constitutionality of the 25-year mandatory minimum sentence prescribed by MCL 750.520b(2)(b) for first-degree criminal sexual conduct. Defendant's facial challenge to that mandatory minimum must therefore be rejected.

Defendant asserts that he is also making an as-applied constitutional challenge. "An as-applied constitutional challenge is based upon the particular facts surrounding defendant's conviction and sentence." *People v Adamowicz (On Second Remand)*, ___ Mich App ___, ___ n 10; ___ NW2d ___ (2023) (Docket No. 330612); slip op at 9 n 10. Our Supreme Court's analyses and holdings in *Parks* and *Stovall* pertained to the general age groups at issue rather than facts specific to the defendants in those cases. This Court in *Williams I* already addressed facts specific to defendant. Defendant attempted to distinguish *Benton* on the ground that "*Benton* involved an older defendant who had a trusting relationship with the victim." *Williams I*, unpub op at 7. We rejected defendant's argument and noted that he "was in fact legally an adult at the relevant time, even if a young one, and he also had a trusting relationship with complainant as a close family friend." *Id*. Defendant's supplemental brief on remand has not identified facts surrounding his conviction and sentence that were not already considered at the time of the issuance of *Williams I*.

Accordingly, defendant's constitutional challenge to the 25-year mandatory minimum sentence prescribed by MCL 750.520b(2)(b) is unavailing. For the reasons previously explained in *Williams I*, the trial court erred by failing to impose the 25-year mandatory minimum sentence. Defendant's sentence is reversed and this matter is remanded for resentencing in conformity with MCL 750.520b(2)(b). We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien